Good morning, Your Honor. Sean Potts for the Petitioner, Telez-Gonzalez. The Petitioner is before this Court on three issues before the Court. The Petitioner's issue of voluntary departure and also the issue of motion to reopen equitable tolling as well as exceptional circumstances and the Board of Appeals, Suspente, power to reopen. The Petitioner is a long-time resident of the United States. He's married to a United States citizen wife as well as he has four United States citizen children and a lawful permanent resident father. The Petitioner, the Immigration Court issued a decision on April 11, 2002 denying the Petitioner's claim for cancellation and removal. Subsequently, the Petitioner sought review at the Board of Immigration and Appeals and that was denied because there was a lack of exceptional hardship and extreme hardship. Therein, the Petitioner, his wife, became a United States citizen and making him eligible for adjustment of status. He then sought to reopen his case before the Board. The motion to reopen was filed a month late. Yes. What was the reason for that? Did he offer any justification or excuse for filing it a month late? There are several grounds for justification for filing a motion to reopen late. The first one is that the Petitioner's wife became a United States citizen on July 23, 2003. With due diligence, the Petitioner then sought to reopen the case based on her changed status. The motion to reopen was due on September 25, 2003 and he subsequently filed the motion to reopen on October 23, 2003. There was a month time which caused the motion to be filed late. Could he have filed that motion timely had he been diligent? I believe the Petitioner was diligent in light of the fact that his wife became a United States citizen in July of 2003. He still had time to file the motion to reopen before the deadline passed. That's true. What explains his failure to do it during that time period? Anything? There is a combination of factors. The Petitioner asserts that there were exceptional circumstances which caused the delay. What are they? One was that at the time in which he filed, he sought review from his counsel who advised him to file, rather than appealing the case directly to the Ninth Circuit, would advise him to file a motion to reopen. So based on that advisory, he filed a motion to open with the board rather than going to the Ninth Circuit. If he would have went directly to the Ninth Circuit, he wouldn't have had the opportunity for relief because the Ninth Circuit wouldn't have been able to grant him with the relief of a justice sentence. They didn't advise him to file it late? They didn't advise him to file it late, but he sought – but there are exceptional circumstances which explain why the filing was late and explain why. Let's look at what are the exceptional circumstances. Well, if the Board of Appeals refuses to reopen on these facts, it would create an unconscionable result. This Petitioner is otherwise available for relief but for the fact that he filed 30 days late. In other context – I think there are no exceptional circumstances explaining the failure to file late. You're simply saying it has a bad result for your client. Well, there is an exceptional – respectfully, there is an exceptional circumstance. In another context, in the issue of motions to reopen where individuals have been ordered to remove in absentia, this Court has recognized that where the failure to reopen a case causes unconscionable results where the individual is otherwise eligible for relief. And apart from the – the exceptional circumstance doesn't necessarily have to relate to the failure to file late, but it can relate to the consequences. I understand what you're arguing, but we're just – I'm just trying to understand why the month delay. Why did he wait a month after the deadline passed to file a motion to reopen? He had – there are no explanations for why he waited for that month, but we do believe there are exceptional – Were you his counselor? No, I was not his counselor. Did he have another lawyer? Yes. Was that lawyer ineffective? I don't believe so. I believe in light of these circumstances. Did the lawyer tell him to file late? No, I – Did he tell him to file on time? I'm not party to whether his advisor was that counselor. Maybe you'd like to look into that if you lose here. I understand. Respectfully, I believe there are exceptional circumstances. This Court has recognized exceptional circumstances where it creates an unconscionable result. What case would you rely on for our authority to disregard the untimeliness? Well, there's a case, Gonzalez before the Ninth Circuit, which deals with motions – deals with orders of – You've got a lot of Gonzalez cases. I'm sorry. I apologize. I don't have the site. Which side was Gonzalez on in that case? Well, he was the respondent. The respondent? Yes. You don't have the site on that case? No, I don't. I don't. But in that case where the individual was ordered removed in absentia and he was otherwise eligible for relief, they found that to be an exceptional circumstance. That's analogous to this situation where this individual was otherwise eligible for relief, but for his late filing he would be eligible. They found it was an exceptional circumstance that he had been removed from the country and was unable to file on time? Well, in that context, it was dealing with individuals who failed to show for their hearing. The court ruled that they – That was a valid excuse for not showing up? The government had removed you? Well, the crux of the court's decision wasn't the excuse for failing to show, but it was whether or not it would cause any prejudice on the government and whether or not if the individual was ordered removed, the consequences would be unconscionable. So you're saying that any time there's a late filing, we have authority to disregard it if it would reach a bad result? That's what this court has ruled in the past when it's dealt with. That would be a nice rule, but which case did we rule that in? That's what I just mentioned. That would be an enlightened rule. Well, okay. We'll look at the Gonzales case, and if we can find that rule, you might prevail. I apologize. I'll ask my clerks to look in the Gonzales case. I apologize. All right. Do you want to save a little time for rebuttal? Yes, please. Okay. Good morning, Your Honors. May it please the Court, nor ask of the Shores for Respondent Gonzales, the Respondent Gonzales. I think I can help counsel out perhaps the cases he's referred to are cases where two judges of this panel have participated or authored, Azarte Boroso and Salvador Calleros. But none of the extensions of the motion of the filing dates for motion to reopen and voluntary departures in those cases apply here. In this case, he was denied cancellation of removal for lack of good moral character, for failure to establish 10 years residence, as well as for failure to establish exceptional and extremely unusual hardship. He appealed to the Board. While the appeal was pending, he married the mother of his four United States children, and a few months later, the Board denied his appeal of the denial of cancellation. He didn't bring up the marriage then. His wife was a lawful permanent resident for whom he could have made an argument, here's my status as changed exceptional and extremely unusual hardship now to my changed status, now that I have an LPR wife. But he didn't do that. And then within 30 days of the Board's decision, his wife naturalized. She had noticed before she appeared and took the oath of office that she would be naturalizing. So he had time within the time of his voluntary departure to move to reopen. And he was represented by counsel all throughout. So it's really a case of bad law. We don't know that, Your Honor. He may not have told his attorney. There is no evidence of that. There is no evidence here. We do not know exactly. But it seems to me that, I mean, if he was represented by counsel, counsel should be aware of these deadlines. He may not have told his attorney. We don't know. We can't say an effective assistance of counsel when there's no allegation. It is here anyway. No. There's been no allegation. It hasn't been exhausted. And there's nothing in the record to indicate when the communications took place. He may simply have not told his lawyer. The responsibility is his. And whether he's right. You're assuming he didn't tell his lawyer. So let's just not assume anything. Let's go on. Forgive me, Your Honor. Then we cannot assume that there was an effective lawyer involved. No. We can't do anything about it here. If you were his counsel, I assume that would be something you would check into. But the point is, on the record here, he had the ability to move to reopen within the time for voluntary departure. He certainly had time to move to reopen within the 90 days. In his brief to the board, which I really don't understand, he says that the time started 30 days after the board's decision. So he was timely because he filed 30 days plus 90 days. And I'm not sure I understand why. I'm not sure if I understand. No, I'm not sure why either. Okay. So let's not go there. But that was his argument to the board. However, to this Court, he says, well, we should have equitably told the time. A, it's not exhausted. B, it doesn't apply because there's no basis for equitable tolling on this record. And he had applied in time. He would have been eligible for adjustment of status. He would have been eligible to apply. Again, there are the good moral character issue here. But that is up to the he would have had the opportunity to be heard. And certainly I would hope, well, the point is that's speculation. But, yes, he would have been eligible to apply. However, in this case, there's another problem. The crux of his brief, and I had several cases, but in this case was that he wasn't advised of the consequences of failing to depart. He hasn't addressed that argument in his opening argument. But the point is, how much clearer could the immigration judge and the board have been about the consequences of failing to depart? He was told and he was given notice in writing, if you don't depart within the voluntary departure period, you won't be eligible to adjust your status. He was told several times by the immigration judge. He was handed notices in writing. And he was advised by the board the first time. And then the board denied him because it was untimely. There's no notice issue. There's no equitable tolling issue. There's no sua sponte issue because he hasn't exhausted it. And this court has said that you have no jurisdiction over a decision or any issue regarding sua sponte. So, basically, he's out of time. And, unfortunately, he's not. So you'll deport him. He won't be eligible to return for 10 years. For 10 years, unless he gets away. And so then his American children will also have to leave. Why would they? Their mother's a citizen. Well, it doesn't matter whether they have a father. We don't believe in keeping families together. Your Honor, I know. I believe in family unity also. But he violated the law. That means that his American children will also have to leave, doesn't it? If you believe in family. No? No, Your Honor. Because, well, families separate for many reasons. First of all, this is not a moral judgment. But, first of all, he was not married to the mother of their children until about six months before. It's not a moral judgment. Why are you pointing it out? Because of the fact that that wouldn't have been. Well, you're right. It wouldn't. I was thinking of family separation. And then he wouldn't have been separated from his wife. So that wouldn't have been legally a family unity issue. Well, the answer is yes, if you believe that the solution under the law is that his children will have to leave the country if they want to have a father. And, well, it depends. Then they may have to have a choice if they want to stay with their father or with their mother. They have a choice, yes, of staying in this wonderful country or having a father. That's the choice. Your Honor, this is a situation brought about by his own failure to follow the very clearly. Or by the law. But we have to abide by the law. We're all bound by it. I just asked you whether that was the consequence. That is the consequence, yes. But I don't see any way around it. Thank you, Your Honors. I beg your pardon. Can I ask you another question? Oh, please. I'm not trying to be funny here, but I'm trying to make sure we're talking about the same case. This is Juan Tellez-Lopez v. Gonzalez. Yes. You said there was a finding of bad moral character. I believe so. But, again, I've argued three cases in the past two days. Please forgive me. When you said that, I was ‑‑ because I read this file. So, anyway. Then please forgive me. I have to revisit with the next case. 080, the moral character is the respondent appears to be an individual of good moral character. Then forgive me. I did preface that, and I really sincerely apologize. This is my ‑‑ But we're talking about the same case. We're talking about the next case. I'm sorry. Wait. So this is ‑‑ Where's the dividing line? Where did you start talking about the next case? Oh, I'm sorry. The good moral character issue. Why the wrong case? Okay. Was there a good moral character issue here? I just read it. The respondent appears to be an individual of good moral character for the purpose of relief for which he is applying. And I read the two BIA decisions, and there's nothing ‑‑ That's why he got voluntary departure. Right. Exactly. Please forgive me. It's the next case that there was a finding before. Again, I'm not trying to be funny, but is there anything else you've told us about the next case? No, that was the only thing. And I did preface that by saying I may have it confused. That is the only issue I have had confused. The law is clear, and the facts are clear on this case. That is the only one I made a mistake on, and I really do apologize. Okay. So let's ‑‑ I just have a question for the government. I know that the Department of Homeland Security has been entering into mediation on some of these cases, and I'm just wondering why this isn't a candidate for that, because, I mean, there was a finding of good moral character. He did get voluntary departure. He does have four U.S. citizen children, a U.S. citizen wife, and his father is a lawful permanent resident, and he takes care of his father. I'm just wondering why you haven't. And he's going to be deported and be ineligible to come back for 10 years, all because of a one‑month delay in filing the motion to reopen. It just seems to me this is a case where maybe the department might want to look at it a little more carefully and see if there's a better resolution. But that's exactly the point, Your Honor. He could have gone to DHS and said ‑‑ But he made a mistake. He made a mistake. He made a mistake. Now, the consequence is he's going to be separated from his children for 10 years, and the children will grow up without a father, or American children have to leave the country. That's a pretty high price for a mistake. Now, that may be the law, but that doesn't prevent the government from acting decently. And what Judge Wardlaw asked, and I had understood that as a general policy, in these adjustment of status cases, that the government was willing to enter into mediation and that they were doing it. I think, Your Honor, is addressing the cases in which Department of Homeland Security will agree to reopening when certain qualifications are met, but one of them is the voluntary departure has not been violated. I will, however, of course, bring to my clients that if they wish to waive the requirements and reconsider it, they can, but that is entirely within their unreviewable discretion. But I will bring it to my clients. That would be nice if they would do that, but we weren't even going that far. I'm happy to do it. You're talking about having a program where the government enters into discussions with the other side, which I thought, as I said, that we had some arrangement on the adjustment of status cases, that they were entering into discussions. If certain requirements are met, but they're not met here because of the voluntary departure tolling. Well, there must always be cases where they haven't met voluntary departure. They're always here. I know, but. And the time for voluntary departure always run in those cases. But they're stayed by Holdings and Nazarte and Barroso and Salvador Calleras. Did I pronounce that correctly? That was your case, I think, Your Honor. The point is he doesn't fall within any of the protective devices of any of these cases. That doesn't prevent the government from saying, look. No. This is really a pretty harsh consequence, and we understand it's the law, and we understand people make mistakes, and maybe we could let this family remain or not. I mean, you could look at the family and say, is this really a nice family where it would really be a moral. You didn't want to talk about morals, but it would really be a moral offense to break up the family because this man made the mistake. That may be the law, but it's not a requirement for the government. What are the inexorable legal consequences of failure to depart on time after receiving an appropriate warning? You're ineligible for 10 years for stated forms of relief, which are the immigration judge and the board advised him of several times, adjustment of status, cancellation of removal, and a few others. There are two issues here. There's the big one. To return to the country also, aren't there? Oh, anyway, to return to the country. There are waivers available, and that's the other way to do it, which is without going beyond the statute or the regs, he can apply for a waiver, and that's a way to stay within the regulatory and statutory framework and allow DHS to exercise its discretion. And that's the way for him to do it, as opposed to going, you know, beyond the four corners of the case and the law and the statute and say, well, you know, which I am still happy to do, bring it to my client and say, exercise of discretion. But the point is, at a certain point, this court and the board and the government have a right to enforce an agreement. In this case, he said, okay, if you give me voluntary departure, I will leave in 30 days, and he doesn't leave. It turns out it's a big mistake for people to ask for voluntary departure. It may be, but he did agree to it. Can you tell them that? You know, it's really not in your interest to ask for voluntary departure because you get a very short period to exercise your rights, and when you don't do it, you're in terrible trouble. And so be careful about asking the government for a favor because, you know, we're not that friendly government. Do you think we are? Your Honor, really, I don't think it's unfriendly. I think DHS has acted appropriately. No, no, no, but I'm saying it's not a favor to give somebody voluntary departure. They get – you know, normally you have 90 days, as you know, to move to reopen. You get voluntary departure, and according to the government, you only have 30 days. Well, I think – You cut short your time to file, and you may not understand that. You know, not all the lawyers who practice in this field are as experienced as the government counsel, and they tend not to meet time limits. It's not unusual, as you know. Well, Your Honor, I think if we – if you're within time and there's a good case, I have not had to defend a case where the alien – since, again, since it's Archie Barroso and some of the payers. Yeah, well, we had to make those opinions to get around the government's position. Yes, you did, but that's – I believe as far as it could be taken, and we have honored that. And in most circuits – But even there, you're still supposed to file within the voluntary – Within the motion to reopen time. Yeah. No, no, within the voluntary departure period time. What we said is you don't have to ask for a stay. Your filing is enough because the government said even if you file, if you haven't also asked for a stay, you're out of luck. Uh-huh. We're – oh, no, no. Well, we're – again, we're bound by the statute, and believe me – Well, anyway, you're going to go back and ask the Department of Homeland Security if in addition to taking care of all the other problems, they could see if – I would suggest that they take a look at this case. And at our mediation process, too. I do need to respond to that. The mediation process we would not agree to because we believe it's completely governed. This would be entirely discretionary at the part of my client. So it's mediation. I mean, when you go to mediation, you're not bound by anything. It's just you meet with a mediator who talks to the government and to the other side. And if you agree to something, fine. If you don't agree, nothing happens. But, again, I don't – I do want to be very clear. I don't feel that we would agree to mediation in this case because there is no – there has been no basis for error in this – in any of the decisions below. And it would be entirely discretionary. Well, this whole thing is discretionary anyway, right? So, I mean, so maybe going through the process would help your client focus on this particular family and is there a job here, are they paying taxes, are the four U.S. citizen children otherwise going on welfare or something. And we just don't know enough about this family, but maybe you could look into it. I will do the mediation process. Again, because it is so entirely discretionary. Well, you really should check with your client on that. Oh, I'm happy to. I'm quite certain they're engaged in our mediation process. Oh, absolutely. There are several cases where they are. Well, through my office. Yes. But I'm happy to – actually, it's just a jurisdictional matter. I would prefer to ask them to do it on their own as opposed to – If they'd like to do it on their own, we'll certainly accept that. Thank you, Your Honors. And if they don't want to do it on their own, then ask them if they'd not enjoy a visit to San Francisco. I'm going to San Francisco. Thank you, Your Honors. Do you have anything further?  Thank you. The next case is Franco Rosendo versus –
judges: Reinhardt, Trott, Wardlaw